ANSWER OF THE JUSTICES TO THE HOUSE OF REPRESENTATIVES.

*Constitutional Law*, Opinions of the Justices, Appropriation of money. *Governor. General Court. Supreme Judicial Court*, Opinions of the Justices.

Where questions propounded to the Justices by the House of Representatives presented essentially the same issues as were decided in *Alliance AFSCME/SEIU, AFL-CIO* v. *Secretary of Admin.*, *ante* 377 (1992), the questions did not present the Justices with a "solemn occasion" within the confines of the constitutional provision authorizing and requiring them to issue an advisory opinion. [1224-1225]

On September 10, 1992, the Justices submitted the following answer to questions propounded to them by the House of Representatives.

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

The undersigned Justices of the Supreme Judicial Court respectfully submit the following response to the questions set forth in an order adopted by the House of Representatives on May 6, 1992, and transmitted to this court on May 7, 1992. We acknowledge the receipt of supplementary material from the Governor, the Massachusetts Organization of State Engineers and Scientists, and the Alliance, AFSCME/SEIU, AFL-CIO.[1]

The order indicates that "pending before the General Court [is] a bill, House No. 5551, entitled 'An Act Making Appropriations to Fund a Certain Collective Bargaining Agreement Between the Commonwealth and the National Association of Government Employees — Unit 6'; a bill, House No. 5553, entitled 'An Act Making Appropriations to

---

[1]The Massachusetts Organization of State Engineers and Scientists submitted a brief while Alliance and the office of the Governor responded by letter.

Fund a Certain Collective Bargaining Agreement Between the Commonwealth and the Massachusetts Organization of State Engineers and Scientists — Unit 9'; a bill, House No. 5550, entitled 'An Act Making Appropriations to Fund a Certain Collective Bargaining Agreement Between the Commonwealth and the National Association of Government Employees — Unit 3'; a bill, House No. 5548, entitled 'An Act Making Appropriations to Fund a Certain Collective Bargaining Agreement Between the Commonwealth and the National Association of Government Employees — Unit 1'; and a bill, House No. 5549, entitled 'An Act Making Appropriations to Fund a Certain Collective Bargaining Agreement Between the Commonwealth and the Alliance, AFSCME-SEIU, AFL-CIO — Units 2, 8 and 10.' "

The order further recites:

"Whereas, Said House Nos. 5548, 5549, 5550, 5551 and 5553 provide for appropriations to fund salary adjustments and other employee economic benefits authorized by several collective bargaining agreements; and

"Whereas, House No. 5003 of 1991, entitled 'An Act Making Appropriations to Fund a Certain Collective Bargaining Agreement Between the Commonwealth and the National Association of Government Employees — Unit 6'; House No. 5004 of 1991, entitled 'An Act Making Appropriations to Fund a Certain Collective Bargaining Agreement Between the Commonwealth and the Massachusetts Organization of State Engineers and Scientists — Unit 9'; House No. 5005 of 1991, entitled 'An Act Making Appropriations to Fund a Certain Collective Bargaining Agreement Between the Commonwealth and the National Association of Government Employees — Unit 3'; House No. 5006 of 1991, entitled 'An Act Making Appropriations to Fund a Certain Collective Bargaining Agreement Between the Commonwealth and the National Association of Government Employees — Unit 1'; and House No. 5007 of 1991, entitled 'An Act Making Appropriations to Fund a Certain Collective Bargaining Agreement Between the Commonwealth and the Alliance, AFSCME-SEIU, AFL-CIO — Units 2, 8 and 10,' copies of which

are submitted herewith, were submitted to the General Court by the Governor on February 1, 1991 and were enacted by both the House of Representatives and the Senate on December 20, 1991 and returned by the Governor with an amendment on December 30, 1991 pursuant to Article LVI of the Amendments to the Constitution of the Commonwealth; and

"Whereas, with the exception of a reference to fiscal year 1991 and the budget for such fiscal year which is updated to fiscal year 1992 and the budget for such fiscal year, the language of said House No. 5003 of 1991 is identical to that of said House No. 5551 of 1992, the language of said House No. 5004 of 1991 is identical to that of said House No. 5553 of 1992, the language of House No. 5005 of 1991 is identical to that of said House No. 5550 of 1992, the language of House No. 5006 of 1991 is identical to that of said House No. 5548 of 1992 and the language of House No. 5007 of 1991 is identical to that of said House No. 5549 of 1992 and

"Whereas, G. L. c. 150E, § 7 (b) (1990 ed.) requires that '. . . a request for an appropriation necessary to fund the cost items contained . . .' in a collective bargaining agreement be submitted to the General Court and upon a rejection of such appropriation to fund such cost items by such legislative body further bargaining must occur; and

"Whereas, the contracts between the commonwealth and the unions covered by the aforesaid bills provide that cost items shall not become effective unless the General Court enacts appropriations necessary to fund the same, in which case such cost items shall be effective, copies of the relevant contract sections and the cover and signature pages are submitted herewith; and

"Whereas, Grave doubt exists as to whether the General Court needs to act on the aforesaid bills; therefore be it

"Ordered, that the opinions of the Honorable Justices of the Supreme Judicial Court be requested by the House of Representatives on the following important questions of law:

"1. Is it necessary for the General Court to enact said House Nos. 5548, 5549, 5550, 5551 and 5553 in order to cause the cost items covered by said bills to be in effect and to thereby render binding such terms in the collective bargaining agreements referred to in said bills, particularly in view of the enactment by the General Court of House Nos. 5003, 5004, 5005, 5006 and 5007 in 1991?

"2. Is it necessary for the General Court to enact said House Nos. 5548, 5549, 5550, 5551 and 5553 in order to appropriate monies to fund such cost items in the collective bargaining agreements referred to in said bills, particularly in view of enactment by the General Court of House Nos. 5003, 5004, 5005, 5006 and 5007 in 1991?"

A copy of all the appropriation bills in question, the Governor's messages attached to the 1991 bills, and the memoranda of the original collective bargaining agreements between the Commonwealth and the various State agencies effective from July 1, 1990, to June 30, 1993, were transmitted with the order.

From the order and papers submitted therewith, the following facts appear[2]: In December, 1990, and January, 1991, the unions and the Commonwealth entered into several collective bargaining agreements that provided for wage and other payroll cost increases for the period from July 1, 1990, to June 30, 1993. Each agreement, entered into during the final days of the administration of Governor Dukakis, contained an article entitled "Appropriation by the General Court," which stated that:

"The cost items contained in this Agreement shall not become effective unless appropriations necessary to fully fund such cost items have been enacted by the General Court in accordance with M.G.L. c. 150E, []§ 7, in which case, the cost items shall be effective on the date

---

[2]For a more detailed recitation of the facts, see *Alliance, AFSCME/SEIU, AFL-CIO* v. *Secretary of Admin., ante* 377, 379-381 (1992).

provided in the Agreement. The employer shall make such request of the General Court. If the General Court rejects the request to fund the Agreement, the cost items shall be returned to the parties for further bargaining."

General Laws c. 150E, § 7 (*b*) (1990 ed.), states in part that: "The employer . . . shall submit to the appropriate legislative body within thirty days after the date on which the agreement is executed by the parties, a request for an appropriation necessary to fund the cost items contained therein . . . ." On February 1, 1991, Governor Weld filed House Nos. 5003-5007 purportedly in compliance with the terms of the agreement which requested appropriations to fund the wage and cost increases for the agreement's first year. However, he also sent a written message along with the bills urging the Legislature to reject the bills "[i]n light of the extraordinarily difficult fiscal circumstances now facing the Commonwealth, for both the current fiscal year and the ensuing one, and in light of other significant cost items for existing employee benefits which the Administration did not negotiate and cannot support and which would be continued under the recently signed agreements . . . ."

In mid-December, 1991, the Legislature approved the bills and transmitted them to the Governor for approval. The Governor returned the bills to the Legislature unsigned at 4:45 P.M. on December 30, 1991, the day the Legislature prorogued. Each bill had accompanying it a written message that noted the Commonwealth's financial problems and the fact that the agreements' provisions for wage increases were "not in any way performance based which is the philosophy this administration will adopt in its future collective bargaining negotiations regarding any salary increases the Commonwealth can afford to pay its employees."[3] The Legislature ad-

---

[3]The Governor proposed amendments to the bills which are of no relevance to the questions before us.

journed as scheduled without taking any further action on the bills.

By virtue of Part II, c. 3, art. 2, of the Massachusetts Constitution, as amended by art. 85 of the Amendments, other branches of government "shall have authority to require opinions of the justices . . . upon important questions of law, and upon solemn occasions." At the outset, the question whether the pending bills must be enacted in order to make the cost items of the collective bargaining agreements effective may appear to present a "solemn occasion." See *Answer of the Justices*, 406 Mass. 1220, 1225 (1989) (solemn occasion posed if Legislature seeks to restore a provision in appropriation act to its status prior to Governor's purported veto of it). "By a solemn occasion the Constitution means some serious and unusual exigency. It has been held to be an exigency when the Governor or either branch of the Legislature, having some action in view, has serious doubts as to their power and authority to take such action, under the Constitution, or under existing statutes." *Answer of the Justices*, 373 Mass. 867, 871 (1977), quoting *Answer of the Justices*, 148 Mass. 623, 625-626 (1889). Yet, the basic question before the Justices is what effect the Governor's actions in refusing to sign the prior bills had.

> "The Legislature's desire to obtain an advisory opinion . . . in light of a prior exercise of constitutional power by the Governor, does not present a solemn occasion within the meaning of Pt. II, c. 3, art. 2, of the Massachusetts Constitution."

*Answer of the Justices*, 406 Mass. at 1225. The occasion is no longer solemn because the court has decided in *Alliance, AFSCME/SEIU, AFL-CIO v. Secretary of Admin., ante* 377 (1992), that the Governor's action pertaining to the funding of the collective bargaining agreements was effective and precludes implementation of their provisions for wage increases without either further bargaining pursuant to G. L. c.

150E, § 7 (*b*), or, if possible, compliance with the procedures described in the *Alliance* opinion.

Justices have, in the past, exercised restraint in similar circumstances; they observed that "[t]he reasons for our exercising restraint . . . become even more compelling when we observe that, in actual litigation, courts have spoken to [the issue] raised by the question[s] posed." *Answer of the Justices*, 375 Mass. 790, 794 (1978). See *Answer of the Justices*, 373 Mass. 867, 871-872 (1977), and authorities cited. See also *Answer of the Justices*, 373 Mass. 898, 903 (1977). The recent opinion in *Alliance, AFSCME/SEIU, AFL-CIO v. Secretary of Admin., supra*, which involves similar facts and issues as this request, concludes that the Governor's refusal to sign the fiscal year 1991 bills rendered the necessary appropriation bills ineffective. Thus, the collective bargaining agreements were ineffective as to those pay increases.[4] The rulings of the *Alliance* opinion control, and we respectfully decline to respond to the questions put before us. We request, therefore, to be excused from answering.

The foregoing answer is submitted by the Chief Justice and the Associate Justices subscribing hereto on the tenth day of September, 1992.

PAUL J. LIACOS
HERBERT P. WILKINS
RUTH I. ABRAMS
JOSEPH R. NOLAN
NEIL L. LYNCH
FRANCIS P. O'CONNOR
JOHN M. GREANEY

---

[4] In *Alliance, supra* at 384, the court stated: "Because the Governor neither signed the funding bills nor acquiesced in them, and since there has been no legislative override, no appropriation was enacted into law. Consequently, there was no appropriation to fund the cost items of the agreements and the cost items never became effective."